934 F.2d 719
 33 Soc.Sec.Rep.Ser. 508, Medicare&Medicaid Gu 39,258
LIVINGSTON CARE CENTER, INCORPORATED; Care Centers of
Michigan, Incorporated, Plaintiffs-Appellants,
v.
UNITED STATES of America, Robert Spain, Defendants-Appellees.
 No. 90-1804.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 27, 1991.
Decided May 31, 1991.
 
 Michael H. Perry (argued), Fraser, Trebilcock, Davis & Foster, Lansing, Mich., for plaintiffs-appellants.
 Marlene Dayne, Asst. U.S. Atty., Office of U.S. Atty., Flint, Mich., Sally Trebbe (argued), Dept. of HHS, Washington, D.C., for defendants-appellees.
 Before BOYCE F. MARTIN and GUY, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Livingston Care Center, Inc. and Care Centers of Michigan, Inc., operators of a nursing home in Howell, Michigan, appeal the district court's dismissal of their claims for damages resulting from their termination as a Medicare provider. We are presented with the question of whether claims based on the wrongful termination of a Medicare provider agreement by the Secretary of Health and Human Services "arise under" the Medicare Act, see 42 U.S.C. Sec. 1395 et seq., and if so, does Congress' limitation in 42 U.S.C. Sec. 1395ii, concerning the ability to bring a claim arising under the Constitution, violate due process rights? Livingston Care asserts its claims arise under the United States Constitution and the Federal Tort Claims Act. The district court dismissed these claims under Fed.R.Civ.P. 12(b)(6) on the basis that Livingston Care had failed to exhaust statutory administrative remedies. We affirm but on other grounds. We believe the district court lacked jurisdiction to hear these claims because they do "arise under" the Medicare Act. We also find no denial of constitutional due process under the statute.
 
 
 2
 We assume all material facts alleged in the Livingston Care's complaint are true and construe the complaint liberally, giving them the benefit of any doubt. Meador v. Cabinet for Human Resources, 902 F.2d 474, 475 (6th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990). Livingston Care Centers, Inc., operates its nursing home facility in Howell, Michigan and it is owned by Care Centers of Michigan, Inc. On September 8, 1986, the United States Department of Health and Human Services determined that Livingston Care and Care Centers had failed to substantially comply with the provisions of their Medicare provider agreement, see 42 U.S.C. Sec. 1395cc, and terminated their participation in the Medicare program effective October 2, 1986. This determination was based on the investigation and recommendation of the Michigan Department of Public Health. The Secretary of Health and Human Services's termination of the plaintiffs' Medicare certification automatically triggered termination of plaintiffs' Medicaid certification as well. Medicaid patients provided Livingston Care with their primary source of income, and it filed bankruptcy proceedings because of these lost revenues.
 
 
 3
 On August 11, 1988, Livingston Care filed an administrative claim with the United States Department of Health and Human Services. The plaintiffs alleged that the Department of Health and Human Services and Robert Spain, the federal employee who evaluated the Michigan Department of Public Health recommendation, negligently terminated their participation in the Medicare program. The Secretary of Health and Human Services denied this claim, but on June 30, 1989, an administrative law judge, after a hearing on the merits of the change, found that the plaintiffs had substantially complied with the requirements of the Social Security Act and that the Michigan Department of Public Health had wrongfully recommended their decertification. There are no further administrative remedies available to the plaintiffs, who timely filed this suit in the United States District Court for the Eastern District of Michigan.
 
 
 4
 Plaintiffs first cause of action alleges that the defendants negligently terminated their certification as a provider of Medicare services. They also allege that they were denied their due process rights in the termination proceedings. Jurisdiction is asserted under the provisions of the Federal Tort Claims Act, codified at 28 U.S.C. Secs. 1346(b), 2671-2680, and the statutory grant of jurisdiction over federal questions, codified at 28 U.S.C. Sec. 1331, which includes those questions arising under the Constitution of the United States.
 
 
 5
 We begin by noting that participation in the Medicare program is a voluntary undertaking. Baptist Hospital v. Secretary of Health & Human Services, 802 F.2d 860, 869 (6th Cir.1986). Providers of health care who choose to participate in the federally sponsored program for the aged and disabled do so with no guarantee of solvency. See id. at 869-870. Just as those who choose to serve individuals not covered by Medicare assume the risks of the private market, those who opt to participate in Medicare are not assured of revenues. As is evident here, participation in Medicare involves a degree of risk which increases directly with the percentage of patient services paid for with government funds; the economic rule which instructs that diversification decreases risk does not stop working just because the government becomes involved.
 
 
 6
 To clarify the nature of the issues in this case, we detail the provisions of the Medicare Act under which the Secretary acted and judicial review of the Secretary's actions is prescribed.
 
 
 7
 The Secretary's power to terminate a Medicare agreement with a provider participating in the program is set out at 42 U.S.C. Sec. 1395cc(b)(2) which provides, in pertinent part:
 
 
 8
 The Secretary may refuse to enter into an agreement under this section or, upon such reasonable notice to the provider and the public as may be specified in regulations, may refuse to renew or may terminate such an agreement after the Secretary--
 
 
 9
 (A) has determined that the provider fails to comply substantially with the provisions of the agreement, with the provisions of this subchapter and regulations thereunder, or with a corrective action required under section 1395ww(f)(2)(B) of this title....
 
 
 10
 The Medicare Act allows for providers, such as the plaintiffs in this case, to receive administrative and judicial review of the Secretary's decision to terminate:
 
 
 11
 [A]n institution or agency dissatisfied with a determination by the Secretary that it is not a provider of services or with a determination described in subsection (b)(2) of this section shall be entitled to a hearing thereon by the Secretary (after reasonable notice) to the same extent as is provided in section 405(b) of this title, and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.
 
 
 12
 42 U.S.C. Sec. 1395cc(h)(1). This review procedure is not plenary. Section 405(h) of Title II of the Social Security Act has been statutorily incorporated into the Medicare Act "to the same extent" that it applies to Title II. 42 U.S.C. Sec. 1395ii. Section 405(h) provides:
 
 
 13
 The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.
 
 
 14
 42 U.S.C. Sec. 405(h) (emphasis added).
 
 
 15
 The plain language of 405(h), as incorporated by 1395ii, precludes the federal courts from entertaining claims based on the jurisdictional provisions of the Torts Claims Act, Sec. 1346 of Title 28, or the statutory grant of jurisdiction over federal questions, Sec. 1331 of Title 28, if the claims "arise under" the Medicare Act.
 
 
 16
 The first issue we must address, whether the plaintiffs' claims "arise under" the Medicare Act, is easily answered. In Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Supreme Court addressed the effect of 405(h) and the meaning of "arising under" within that section. Salfi involved a constitutional challenge to the requirements of 42 U.S.C. Secs. 416(c)(5) and (e)(2) which require spouses and step-children to be related to a deceased for nine months in order to receive social security benefits. The Court concluded that the district court lacked jurisdiction to hear the claims due to the bar on Sec. 1331 claims imposed by the last sentence in Sec. 405(h), ruling that the claim arose under the Social Security Act because the Act provided "both a standing and substantive basis for the presentation of [plaintiff's] constitutional contentions....[,]" and the plaintiff was seeking social security benefits. Id. at 760-761, 95 S.Ct. at 2464-2465. In the present case, Livingston Care is seeking consequential damages resulting from the alleged wrongful termination under the Medicare Act. It is asserting negligence in the decertification process, a procedure established in the Medicare Act to ensure adequate Medicare services. As in Salfi, the Act provides both the "standing and the substantive basis" for the plaintiff's claims. Under the plain language of 405(h), plaintiffs' claims, based on Sec. 1331 and Sec. 1346 of Title 28, should be precluded as "arising under" the Medicare Act.
 
 
 17
 This simple analysis brings us to the second and much more complex issue: does the limiting effect of Sec. 405(h), as incorporated into the Medicare Act by Sec. 1395ii, violate the due process clause of the Constitution. Plaintiffs assert Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), directs us to provide a judicial forum for their claims. In Michigan Academy, an association of physicians challenged the validity of federal regulations which provided payments of different benefits to similarly situated physicians. Id. at 668, 106 S.Ct. at 2134. The Court addressed the question of whether Congress, in enacting Sec. 1395ff or Sec. 1395ii, precluded judicial review of regulations promulgated by the Secretary to govern Medicare contracts between the Secretary and private health insurance carriers. The Court, after noting that Sec. 1395ff explicitly authorizes judicial review, concluded that Sec. 405(h), as incorporated by Sec. 1395ii, precludes review of benefit determinations made by the Secretary but not the method by which the determination is made. Id. at 675, 106 S.Ct. at 2138. The Court added, "[o]ur disposition avoids the 'serious constitutional question' that would arise if we construed Sec. 1395ii to deny a judicial forum for constitutional claims arising under Part B of the Medicare program." Id. at 681 n. 12, 106 S.Ct. at 2141 n. 12. This footnote is fatal to plaintiff's reliance on Michigan Academy.
 
 
 18
 In Michigan Academy, the plaintiffs were seeking review of regulations created by the Secretary under the authority of Sec. 1395ff for use in determining benefits. The Court merely held the explicit language of the Act provided for such review. The plaintiffs in this case seek a different remedy under a different provision of the Medicare Act. Like the statute at issue in Michigan Academy, Sec. 1395ff, the statute at issue in this case, Sec. 1395cc, explicitly provides for judicial review. See 42 U.S.C. Sec. 1395cc(h)(1). Also like Sec. 1395ff, Sec. 1395cc judicial review is limited by the language of Sec. 405(h), as incorporated by Sec. 1395ii. However, the plaintiffs in this case are not seeking review of regulations promulgated under Sec. 1395cc, nor are they seeking review of the actual termination decision made under the authority of Sec. 1395cc. The plaintiffs seek a cause of action that would allow consequential damages because of their wrongful termination as a provider of Medicare services under Sec. 1395cc. This goes far beyond any issue confronted in Michigan Academy.
 
 
 19
 If Congress completely proscribed the federal courts from hearing constitutional claims, it might violate the due process clause of the fifth amendment. See Barmet Aluminum Corp. v. William K. Reilly, 927 F.2d 289, 294-296 (6th Cir.1991). However, we do not encounter that problem here. As the Supreme Court stated in Salfi, 422 U.S. 749, 95 S.Ct. 2457,
 
 
 20
 [T]he plain words of the third sentence of Sec. 405(h) do not preclude constitutional challenge. They simply require that they be brought under jurisdictional grants contained in the Act, and thus in conformity with the same standards which are applicable to nonconstitutional claims rising under the Act. The result is not only of unquestionable constitutionality, but it is also manifestly reasonable, since it assures the Secretary the opportunity prior to constitutional litigation to ascertain, for example, that the particular claims involved are neither invalid for other reasons nor allowable under other provisions of the Social Security Act.
 
 
 21
 Id. at 762, 95 S.Ct. at 2465. Section 1395cc explicitly provides for judicial review of termination decisions made by the Secretary. Under the principles set forth in Michigan Academy, this review would include review of any regulations developed by the Secretary for applying Sec. 1395cc, but it cannot be stretched to include review in an action for consequential damages resulting from wrongful termination. Congress proscribed such claims when it enacted Sec. 1395ii.
 
 
 22
 For the foregoing reasons, the judgment of the district court is affirmed.